IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**DEVELOPERS SURETY & INDEMNITY CO.,**
an Iowa corporation,

          **Plaintiff,**

   v.                                              Civ. No. 11-00032 JP/LFG

**HELCO, INC.,** a New Mexico corporation,
**BILLY HELLUMS,** an individual,
**DOROTHY HELLUMS,** an individual, and
**JARED HELLUMS,** an individual.

          **Defendants.**

**MEMORANDUM ORDER AND OPINION**

Plaintiff, Developers Surety & Indemnity Co., filed an *ex parte* APPLICATION FOR WRIT OF GARNISHMENT on July 24, 2012, seeking to obtain funds from Defendants' bank to satisfy a judgment that Plaintiff had obtained against Defendants. *See* Doc. No. 58. The Court issued an *EX PARTE* WRIT OF GARNISHMENT (Doc. No. 59) ("Writ of Garnishment") on July 31, 2012. After the garnishee bank submitted its ANSWER TO WRIT OF GARNISHMENT (Doc. No. 61), indicating that it held accounts in Defendants' names, Defendant Helco, Inc. lodged OBJECTIONS TO ANSWER TO WRIT OF GARNISHMENT (Doc. No. 62) ("Objections"), claiming that the garnishment was unlawful under N.M.S.A 1978, § 57-28-5(D) (2007), the Prompt Payment Act. The Court conducted a hearing on November 16, 2012, and requested supplemental briefing from the parties. Having received the parties' briefs, the Court has now considered the record in this case, the parties' arguments, and the relevant law, and concludes that Defendant Helco, Inc.'s Objections lack merit and should be denied.

1

BACKGROUND

A. Procedural History[1]

This matter arises from Plaintiff's efforts to obtain indemnification from Defendants after Helco, Inc. defaulted on a construction contract. In connection with the contract, Plaintiff had issued two bonds as surety, in exchange for an Indemnity Agreement on which Defendant Helco, Inc. is the principal and the individual Defendants are indemnitors. *See* Doc. No. 1, Exhibits A-C. After the default, Plaintiff filed suit against Defendants in this Court on January 11, 2011 to recover the losses and expenses that Plaintiff incurred through the claims on the Bonds. *See* Doc. No. 1. On September 30, 2011, this Court issued a Memorandum Order and Opinion granting Plaintiff's motion for summary judgment on Plaintiff's claim for reimbursement of losses and expenses in the amount of $409,219.51, as well as on Plaintiff's claim for reserves in the amount of $450,000.00. *See* Doc. No. 42 at 16. The Court also granted Plaintiff's MOTION FOR ATTORNEY'S FEES AND TO TAX COSTS (Doc. No. 49). *See* Doc. No. 54. After requesting production of financial information from Defendants, Plaintiff obtained the Writ of Garnishment.

B. Defendant Helco, Inc.'s Objections to the Writ of Garnishment

Defendant Helco, Inc. objects to the Writ of Garnishment on the basis that "[t]he account garnished contains funds intended for the payment of subcontractors and suppliers of Helco, Inc.," and that New Mexico's Prompt Payment Act prohibits garnishment of such funds. Objections at 1. Defendant relies on section 5(D) of the Act, NMSA 1978, § 57-28-5, which reads:

---

[1] This Background section only includes facts related to Defendant's Objections. The detailed facts of the underlying case are related at length in the Court's MEMORANDUM ORDER AND OPINION granting Plaintiff's motion for summary judgment. *See* Doc. No. 42.

> A creditor shall not collect, enforce a security interest against, garnish or levy execution on those progress payments or other payments that are owed by an owner, contractor or subcontractor to a person, the owner's contractor or subcontractor's surety, who has furnished labor or material pursuant to a construction contract.

Defendant asserts that the garnished account holds funds meant for Defendant's suppliers and subcontractors, and that the Prompt Payment Act thus prohibits garnishment of the account.

In support of this claim, Defendant first references *Gallegos v. Espinoza*, which quoted an earlier case in noting that "a garnishor can acquire no greater rights by writ of garnishment than those that the judgment debtor would have been able to assert against the garnishee." 2002-NMCA-011 at ¶ 8, 131 N.M. 487, 488, 39 P.3d 704, 705 (quoting *Cent. Sec. & Alarm Co. v. Mehler*, 1998-NMCA-096, ¶ 13, 125 N.M. 438, 963 P.2d 515). Defendant also cites *Gallegos*'s discussion of a law on public works contracts that, though repealed shortly before *Gallegos* was decided, was partly incorporated into the Prompt Payment Act, and "provided that contractors and subcontractors were required to pay their subcontractors and materialmen promptly and out of monies received for payment." *Id.* at ¶ 13-14. Defendant believes that the Prompt Payment Act thus provides a basis for Defendant's assertion that it lacks rights to most of the account funds because they must be paid to suppliers. Defendant claims that the only funds owned by Defendant in the account are its profit margins, which Defendant asserts to be no more than 10-15%. *See* Letter to the Court from Counsel to Defendant Helco, Inc., dated November 20, 2012 ("Defendant's Letter Brief") at 2.

Defendant next cites *Hasse Contracting Co. v. KBK Fin., Inc.*, 1998-NMCA-038, 125 N.M. 17, 956 P.2d 816, *aff'd but criticized*, 1999-NMSC-023, 127 N.M. 316, 980 P.2d 641 for its statement that the construction industry's economic viability ". . . requires that payments be made by the owner and properly applied down the line in order to assure performance and an

3

unburdened final product." *Id.* at 24. Defendant notes that *Hasse* "held that the obligation to pay materialmen and suppliers is implied in all construction contracts." Defendant's Letter Brief at 2. In Defendant's view, it is irrelevant that certain "funds are sitting in the contractor's bank account on the day the bank is served with the garnishment . . . because a garnishor can acquire no greater rights [through] garnishment than" the judgment debtor's rights against the garnishee. Furthermore, because "the money [in the account] was owed by Helco to others . . . Plaintiff is not entitled to those funds." *Id.*

### C. Plaintiff's Response to the Objections

Plaintiff argues that the Prompt Payment Act does not apply to the case because Plaintiff is not garnishing funds that are protected by the Act, which protects "progress payments or other payments that are owed by an owner, contractor or subcontractor to a person . . . who has furnished labor or materials pursuant to a construction contract." RESPONSE TO OBJECTION TO WRIT OF GARNISHMENT (Doc. No. 67) ("Response") at 2 (quoting NMSA 1978, § 57-28-5(D)). Plaintiff notes that Defendant's position is evidently "that each and every one of its bank accounts is exempt from garnishment simply because, conceivably, funds in those accounts may be used at some time to pay suppliers or subcontractors who provided labor or materials" for a construction contract. Response at 3. Plaintiff points out that such a broad interpretation of the Prompt Payment Act would "effectively make contractors collection proof." *Id.*

Plaintiff asserts that neither *Gallegos* nor *Hasse* is on point. Plaintiff notes that the general contractor in *Gallegos* had defenses to the subcontractor's right to payment, and the *Gallegos* court referred to these defenses in holding that the judgment creditor who sought to garnish funds from the general contractor to satisfy the subcontractor's debt could only assert the same rights that the subcontractor had; the holding was not a general limitation on judgment creditors' rights.

Letter to the Court from Counsel to Plaintiff Developers Surety & Indemnity Co. ("Plaintiff's Letter Brief") at 1. Plaintiff similarly dismisses *Hasse* because that case "involved a contract for a public works project, and specifically the priority of a supplier to certain retained funds," which is not at issue here. *Id.* at 2. Plaintiff also emphasizes that Defendant, "as a creditor to Garnishee [bank], has the contractual right to withdraw the funds concerned," contrary to Defendant's assertion that Defendant only owns the funds representing the profit margin on its projects. *Id.* Plaintiff argues that because Defendant can withdraw the money in the account and pay it to whom it pleases, the funds can be garnished by Plaintiff. *Id.*

## DISCUSSION

### A. Law on the New Mexico Prompt Payment Act

The Court agrees with Plaintiff that the cases cited by Defendant are inapplicable here. Furthermore, the Court has found very few other cases interpreting the Prompt Payment Act, and none dealing with the subsection on which Defendant relies. In one case, the New Mexico Court of Appeals interpreted the subsection prior to that on which Defendant relies "to indicate legislative intent to penalize a contractor for failure to [pay] within a specified period of time if there is no escrow arrangement." *J.R. Hale Contracting Co., Inc. v. Union Pac. R.R.*, 2008-NMCA-037, ¶ 89, 143 N.M. 574, 599, 179 P.3d 579, 604. Instructively, The Honorable United States Bankruptcy Judge Robert H. Jacobvitz interpreted the same subsection in a bankruptcy case, and held it "does not establish a technical trust giving rise to a fiduciary duty . . . . The statutory language does not include trust-like language obligating contractors or subcontractors to hold specific, identifiable funds in trust for the benefit of their suppliers. Instead, the statute obligates contractors and subcontractors to make prompt payments to their suppliers and subcontractors and imposes a penalty for failing to do so." *In re Ramos*, 442 B.R. 37, 43 (Bankr. D. N.M. 2010). No cases

uncovered by the Court or pointed out to the Court by the parties have any bearing on the Prompt Payment Act's relevance to a contractor's claim of exemption from garnishment.

**B. The New Mexico Prompt Payment Act Does Not Protect Defendant's Bank Account**

In diversity cases where New Mexico law governs, as here, the principles of statutory interpretation for courts to apply are clear.

> Under New Mexico law, the goal of statutory interpretation is to determine and give effect to legislative intent. *N.M. Bd. of Veterinary Med. v. Riegger,* 142 N.M. 248, 164 P.3d 947, 952 (2007). The primary indicator of legislative intent is the plain language of the statute, and a court should "give the words used in the statute their ordinary meaning unless the legislature indicates a different intent." *High Ridge Hinkle Joint Venture v. City of Albuquerque,* 126 N.M. 413, 970 P.2d 599, 600 (1998) (internal quotation marks omitted). A court should also consider the "object the legislature sought to accomplish and the wrong it sought to remedy" when interpreting statutory language. *Lopez v. Emp't Sec. Div.,* 111 N.M. 104, 802 P.2d 9, 10 (1990). When multiple sections of a statute are involved, "they must be read together so that all parts are given effect." *Smith v. Bernalillo Cnty.,* 137 N.M. 280, 110 P.3d 496, 501 (2005).

*United Rentals Nw., Inc. v. Yearout Mech., Inc.*, 573 F.3d 997, 1001 (10th Cir. 2009). Applying these principles to the Prompt Payment Act, the Court concludes that the Act's plain meaning and intended application is to ensure that contractors pay subcontractors and suppliers within a specific time frame. *See* NMSA 1978, § 57-28-5(A) (all construction contracts must require payment within twenty-one days of request, except as under subsection B); NMSA 1978, § 57-28-5(B) (public bodies may pay within forty-five days); NMSA 1978, § 57-28-5(C) (contractors and subcontractors must pay their subcontractors and suppliers within seven days). The point, as Defendant suggests, citing *Hasse*, is to ensure that the construction industry is not hurt by bottlenecks arising from squabbles over timing of payments. Defendant's Letter Brief at 2.

Subsection D, on which Defendant relies, furthers the Prompt Payment Act's scheme of

scheduled, unhindered payment by preventing any "progress payments or other payments that are owed" to a supplier on a construction contract from being garnished or otherwise collected by outside parties. NMSA 1978, § 57-28-5(D). Subsection D does not, by its plain terms or by any reasonable interpretation of legislative intent, protect every bank account that a contractor or subcontractor has, simply because the contractor or subcontractor may make payments from it, even if those payments are in accord with the timing of the Prompt Payment Act. The subsection only protects "progress payments" that are specifically owed to subcontractors or suppliers, as might be demonstrated by designations or restrictions on the account preventing funds from going to the account holder or anyone other than the designated subcontractor or supplier to whom payment is owed. Furthermore, as Judge Jacobvitz noted, the Prompt Payment Act also does not itself create a trust or escrow situation; the Act itself does not "oblig[e] contractors or subcontractors to hold specific, identifiable funds in trust for the benefit of their suppliers. *In re Ramos*, 442 B.R. 37, 43 (Bankr. D.N.M. 2010). If a contractor or subcontractor does not have money sequestered in a protected account established and maintained for progress payments to its subcontractors or suppliers, the Prompt Payment Act will not impose such a trust on a general bank account to prevent outside creditors from being able to garnish the account.

     In this case, the Court concludes that the Prompt Payment Act does not protect Defendant Helco, Inc.'s bank account. Defendant may be in the business of construction contracting, but Defendant has made no showing that its bank account holds funds specifically earmarked for its suppliers or subcontractors, much less that such funds are in a trust or escrow. Defendant asserts that "[a]ll of Helco's subcontractors, suppliers and employees are paid" out of this account, but this does not mean that the account is protected by the Prompt Payment Act, which only covers "progress payments or other payment that are owed" to specific subcontractors and suppliers.

NMSA 1978, § 57-28-5(D). As Plaintiff notes, Plaintiff has not garnished "progress payments," but rather has garnished "funds held in accounts with Garnishee [bank], [and these are] not 'payments' as used in the statute." Response at 2. If the funds in the account are not earmarked and set aside for specific projects—and Defendant has not attempted to demonstrate that they are—then the Court can see no way that the Prompt Payment Act applies to protect the account. As a result, Defendant Helco, Inc.'s objections to garnishment of the account will be denied.

**IT IS ORDERED THAT** Defendant Helco, Inc.'s Objections to Answer to Writ of Garnishment (Doc. No. 62) are denied.

_____
SENIOR UNITED STATES DISTRICT JUDGE